[No. 29030. Department Two. December 1, 1943.]

C. F. SCHANNO, *Respondent,* v. VICTOR L. PANGLE *et al.,* *Defendants,* C. A. EASTON, *Appellant.*[1]

*Horrigan & Horrigan,* for appellant.

*Edward A. Davis,* for respondent.

[1]Reported in 143 P. (2d) 540.

MALLERY, J.—Plaintiff brought this action to foreclose a fifteen hundred dollar chattel mortgage upon garage equipment owned by the defendants Pangle. Prior to this action, the defendant Easton had obtained a judgment against the Pangles and had attached the property covered by the mortgage; hence Easton and the sheriff of Franklin county were joined as parties defendant. Easton counterclaimed and alleged that the defendants Pangle had, without consideration and in fraud of creditors, conveyed to the plaintiff certain real property in Franklin county, Washington, and sought to have the conveyance set aside or be held to be in effect only a mortgage, or that the deed be held to have been taken in trust for the benefit of the creditors of the grantor. From a judgment in favor of the plaintiff, the defendant Easton appeals.

The respondent, Schanno, is the father of Mrs. Pangle. At the time the Pangles bought the real property, Schanno loaned them twelve hundred dollars, which was later evidenced by a note for twelve hundred dollars dated June 3, 1937. No payments were made on this note. Later and on May 24, 1938, Schanno loaned the Pangles nine hundred dollars and, on October 13, 1938, a further sum of seven hundred dollars. On these latter loans, one hundred dollars was repaid, leaving fifteen hundred dollars due Schanno on the same. Schanno loaned the Pangles other sums of money from time to time, but no records of the amounts were kept.

The Pangles operated a garage and among other things sold automobile tires. The real property here involved, upon which were two dwelling houses, was mortgaged to a Pasco bank and, on March 13, 1940, there was unpaid on the mortgage $2,990.15. The Pangles were also indebted to the Firestone Tire & Rubber Company in the sum of $1,326.19, on account of merchandise purchased for use in the operation of the garage. At that time, Pangle had been asked for payment but had no reason to believe that an action was contemplated against him.

At the same time, for some reason not disclosed by record,

the insurance company, which carried the insurance on the two houses on the property involved herein, canceled the insurance, and no other company would assume the risk. The bank thereupon demanded its money and threatened to foreclose its mortgage. The Pangles could not pay. They endeavored to get other insurance but failed. Thereupon they sold and conveyed the property to respondent in consideration of the cancellation of his first note in the amount of twelve hundred dollars. Before closing the deal, the matter was discussed with the bank and it agreed to continue carrying the mortgage if Schanno acquired the proptery and obtained insurance, all of which was promptly done.

On April 26, 1940, the later note for fifteen hundred dollars was converted into a new note secured by a chattel mortgage on Pangles' garage equipment. The Firestone Tire & Rubber Company assigned their account to Easton, who obtained a judgment on it against the Pangles and attached the Pangles' garage property, which forced them out of business.

By stipulation between the parties, this garage equipment was sold and the proceeds divided between Pangle and Easton, but the record does not disclose the details of the division. The sole question presented by this appeal is whether the conveyance of the real property to Schanno was in fraud of creditors.

Easton's expert witness on the value of the real property testified its fair market value on March 13, 1940, was sixty-five hundred dollars. The court held that there was no evidence offered as to the market value of the property under the circumstances concerning the mortgage and the insurance. The court found that Schanno knew nothing about the Firestone debt of Pangle, and further found that there was no arrangement of any kind for reconveyance of the property to the Pangles and that the sale was open and in good faith. Schanno is a retired railroad man and, because of his ill health, Mrs. Pangle, his daughter, attended to most of his business for him. The Pangles lived in one

of the houses and paid rent therefor for about a year after the conveyance. The other house was also rented. Mrs. Pangle collected the rents and paid the money into the bank on the mortgage.

Appellant claims that the fact that the grantors were hard pressed financially, were related to the grantee; that the consideration for the conveyance was the cancellation of a preexistent promissory note; that possession of the real estate was never surrendered to the grantee; that subsequent rentals were collected by the grantors, who continued to make the payments on the mortgage; together with the disparity in the consideration paid and the value of the equity in the property, required the court to find the conveyance to be fraudulent.

▆▆▆ Fraud is never presumed. The appellant's citations support his contentions that fraud may be imputed where the discrepancy between the value of the property conveyed and the amount of the canceled debt is great and is so disproportionate as to put the transferee on notice that he is getting more than mere satisfaction of his claim; that transactions between relatives will be more closely scrutinized than others. However, it is also true that an insolvent debtor can prefer one creditor to the exclusion of others. *Puget Sound Nat. Bank v. More,* 159 Wash. 5, 291 Pac. 1081.

The statement of facts in this case has followed the facts as found by the trial court. This we are constrained to do, unless we are able to say that the findings by the trial court are not sustained by a preponderance of the evidence. We are not able to do so in this case.

▆▆▆ The good faith of the parties should be viewed in the position in which they found themselves. A mortgage foreclosure was imminent. The ordinary standard fair market value is not gauged by the probable return on a forced sale.

Upon foreclosure, the costs thereof would be added to the amount of the mortgage of $2,990.15. We are not prepared to say that there is so great a disparity between the consideration paid by the grantee and the value of the

grantor's interest that the grantee would be put upon notice, as a matter of law, that he was getting substantially more than the satisfaction of his claim.

The judgment is affirmed:

SIMPSON, C. J., MILLARD, BLAKE, and ROBINSON, JJ., concur.